# Arnold's Estate.

*Wills—Construction—Meaning of "personal things"—Oral evidence.*

Testatrix left the following holographic will: "I, Anna H. Arnold, in case of my death give my portion of the household goods to my sister, Ella R. Arnold. If she is not living, they are to be given to my sister Mary Arnold Babcock. My jewelry and other personal things, are to be divided equally among my two sisters, Ella R. Arnold and Mary Arnold Babcock." Her estate consisted of corporate stocks and bonds and cash in bank appraised at $158,750.15, and household furniture, jewelry and clothing appraised at $300. Her next of kin were the two sisters named in the will and three brothers; the two sisters were very close and attentive to her, whereas she had maintained no intimate relations with her brothers for several years. A trust company had entire charge of the property. *Held,* (1) evidence was properly admitted to show that testatrix habitually referred to the constituents of her estate in the hands of the trust company as her "things"; (2) all her personal property passed under the will to her two sisters.

Argued March 4, 1913. Appeal, No. 383, Jan. T., 1912, by Helen M. Arnold, Administratrix of John M. Arnold, deceased, from decree of O. C. Berks Co., May T., 1912, No. 37, refusing prayer for account and dismissing petition in Estate of Anna H. Arnold, deceased. Before FELL, C. J., BROWN, MESTREZAT, STEWART and MOSCHZISKER, JJ. Affirmed.

Petition to require administratrices to file an account. Before BLAND, P. J.

The opinion of the Supreme Court states the facts.

The court dismissed the petition. Petitioner appealed.

*Errors assigned* were the dismissal of the petition and the admission of testimony to show the meaning of the will.

*William Kerper Stevens,* with him *William B. Bech-tel,* for appellant.—The words, "other personal things," in the will of Anna H. Arnold must be confined to articles ejusdem generis with those specified in the preceding part of the will, that is to say, "household goods" and "jewelry." The residue of her estate must, therefore, be distributed under the intestate laws: Van Leer v. Van Leer, 221 Pa. 195; Howe's Appeal, 126 Pa. 233; Ayrton v. Abbott, 14 Adol. & E. (N. S.) 1; Rhone v. Loomis, 74 Minn. 200 (77 N. W. Repr. 31); Rawlings v. Jennings, 13 Ves. Jr. 39; Hotham v. Sutton, 15 Ves. Jr. 319; West v. Lawday, 11 House of Lords Cases 375; Arnold v. Arnold, 2 Myl. & Craig 256; Reimer's Est., 159 Pa. 212; Gallagher v. McKeague, 125 Wis. 116 (103 N. W. Repr. 233); Schmidth's Est., 183 Pa. 641; Shaner v. Wilson, 207 Pa. 550; Lippincott's Est., 173 Pa. 368; Dole v. Johnson, 85 Mass. 364; Johnson v. Goss, 128 Mass. 433; Bills v. Putnam, 64 N. H. 554 (15 Atl. Repr. 138).

The intention of the testatrix is clearly expressed and the objects of her bounty definitely ascertained, and, therefore, parol evidence was not admissible to alter or explain the language of the will: Huber's App., 80 Pa. 348; Reck's App., 78 Pa. 432; Wusthoff v. Dracourt, 3 Watts 240; Gilmore's Est., 154 Pa. 523; Lord Cheyney's Case, 5 Coke 68a; Cole v. Rawlinson, 1 Salk. 234; Shelbourne v. Inchiquin, 1 Bro. Ch. 338; Shore v. Wilson, 9 Clark & Finnelly 355; Kilvert's Trusts, L. R., 12 Eq. Cases 183.

The presumption against intestacy is overcome by the rule that an heir can be disinherited only by express devise or necessary implication: Schmidth's Est., 183 Pa. 641; Shaner v. Wilson, 207 Pa. 550; Geisinger's App., 1 Monaghan 600.

*Stephen Stone,* of *Stone & Stone,* with him *William Rick,* for appellees.—Where the language of a will is uncertain and doubtful or contains a latent ambiguity,

extrinsic evidence may be admitted for the purpose of explaining the will: Phelp's Est., 4 Pa. D. R. 258; Miller's Est., 26 Pa. Superior Ct. 443; Best v. Hammond, 55 Pa. 409; Sharp v. Wightman, 205 Pa. 285; Brownfield v. Brownfield, 12 Pa. 136; Domestic & Foreign Missionary Society's Appeal, 30 Pa. 425; Metzger's Est., 222 Pa. 276; Safe Dep. & Trust Co. of Pittsburgh v. Bovaird & Seyfang Mfg. Co., 229 Pa. 295; Vilsack's Est., 226 Pa. 379; Gilmore's Est., 154 Pa. 523.

There is no distinction in meaning between the phrases "things personal" and "personal things": People v. Holbrook, 13 Johns. 90; People v. Maloney, 1 Parker Cr. R. (N. Y.) 593; In re Gay's Gold, 80 U. S. (13 Wall.) 358; Hawkins v. State Loan & Trust Co., 79 Fed. Repr. 50; U. S. Moulton, 27 Fed. Cases 11, Case No. 15827.

A construction which would produce a partial intestacy will not be adopted if the will can be reasonably and fairly interpreted so as to pass the whole estate: Reimer's Est., 159 Pa. 212.

OPINION BY MR. JUSTICE MOSCHZISKER, March 31, 1913:

This case involves the construction of the following will: "I, Anna H. Arnold, in case of my death give my portion of the household goods to my sister, Ella R. Arnold. If she is not living, they are to be given to my sister Mary Arnold Babcock. My jewelry and other personal things, are to be divided equally among my two sisters, Ella R. Arnold and Mary Arnold Babcock."

The testatrix left an estate consisting of corporate stocks and bonds and cash in bank appraised at $158,-750.15, and household furniture, jewelry and clothing appraised at $300. Her next of kin were the two sisters named in the will and three brothers. One of the brothers died shortly after the decedent, and his widow and administratrix petitioned the Orphans' Court for an accounting. The petitioner contended that the will

now before us did not contemplate or dispose of moneys or securities, but should be confined in its operation to personal articles belonging to the decedent of a purely domestic nature, and that the testatrix had died intestate as to the bulk of her possessions. In reply, the legatees contended that the decedent's entire estate passed to them under the will. The court below decided in favor of the legatees and the petitioner has appealed.

The appellant assigns for error the decree dismissing her petition, and the admission of testimony offered to show in what sense the testatrix habitually used the word "things" in connection with her belongings, property or estate. The controversy arises over the meaning of the phrase "and other personal things," as employed by the decedent in her will. Bouvier's Law Dictionary states that by the word "things" is understood every object except man which may become an active subject of right; Anderson's Law Dictionary defines it as, "subject-matter, substance, effect, any object that may be possessed"; Words & Phrases says, "the word 'things' is of extensive signification, and in common parlance may intend all matters of substance in contradistinction to persons"; Webster gives as a meaning, "whatsoever may be possessed or owned"; and the Standard Dictionary,— "a subject of property and dominion." If so intended, the word "things" may be given as extensive a meaning as the word "effects" or "goods" or "assets" or "property," etc., and if it was so intended in the present will, then Anna H. Arnold disposed of her entire estate. In Jacobs's Est., 140 Pa. 268, the word "money" was construed to include real estate, and in the English case of Wright v. Shelton, 18 Jurist 445, the phrase "wordly goods" was given a like construction; again, in Tofield v. Tofield, 11 East *246, real estate was held to pass under the general words "personal effects" following an enumeration of several items of things personal. Other English authorities along this line are stated by Judge PENROSE in Pearson's Est., 10 Pa. D. R. 189, and in Golz's

Est., 8 Pa. D. R. 647; also see Williams on Executors 1015.

Thus it may be seen that words of the character em-- ployed in this will are susceptible of a comprehensive meaning, and if the two sisters named by the testatrix were her only near kin, under the rule that an intestacy is always to be avoided when possible, the writing could be readily construed as passing all her belongings. The will only becomes equivocal when the fact that the testatrix had three other heirs at law is made to appear; and it is this circumstance which raises the inquiry as to whether or not she intended to dispose of her whole estate. "When the intention is clearly expressed, but a doubt exists not as to the intention but as to the object to which the intention applies, a latent ambiguity arises": Safe Deposit & Trust Co. v. Bovaird & Seyfang Mfg. Co., 229 Pa. 295, 301; "where an ambiguity is introduced by extrinsic circumstances, in such case parol evidence is admitted:" Wusthoff v. Dracourt, 3 Watts 240, 243; Forquer's Est., 216 Pa. 331, 339. "Parol evidence is admissible......to explain latent ambigui-- ties in a will, or to apply its provisions to the subject or person intended, where the description is......too general to be understood": Best v. Hammond, 55 Pa. 409, 412. "To aid the context by extrinsic proof of the circumstances and situation of the testator when it was executed is constantly permitted at the court's discretion, and this constitutes a proper, indeed often indispensable, matter of inquiry when construing a will; for whatever a will may set forth on its face, its application is to persons and things external": Gilmore's Estate, 154 Pa. 523, 530. "If the evidence from the context is not conclusive, but furnishes an argument only, parol evidence will be admitted".: Hawkins on Wills, (2nd Ed.) p. 13. "The evidence is not adduced to control the will but to rebut a presumption from matter extrinsic to it": Sharp v. Wightman, 205 Pa. 285, 288. So if it be granted that, since the testatrix had three

heirs at law who were not mentioned in her will, the meaning of the general words employed by her, when applied to the situation, may be viewed as involved in some doubt, then it was proper to admit and consider the extrinsic evidence here introduced. This evidence was not to show the intention of Anna H. Arnold, but to fathom the exact meaning of the words she employed; that is, it was not offered to prove directly what the testatrix meant, but to show the precise meaning of her words, so that her intention might be deduced therefrom. As to the character of the evidence depended upon for this purpose, Hawkins on Wills, 10, states, "It is to be observed that evidence in the shape of sayings, &c., of the testator, may be, in certain cases, adduced to show in what sense he habitually used certain words, even where the description is not equivocal (provided the sense thus sought to be put on them does not contravene their ordinary and legitimate meaning) : this being distinct from evidence adduced to show in what sense he used the words on the particular occasion of writing his will"; and the following is given as an illustration of the text, —"In Duke of Leeds v. Amherst, 9 Jurist 359, Lord Lyndhurst held that the fact of the testator having been accustomed to describe a particular picture belonging to himself as a portrait, might be admitted to show that it properly passed under that description in his will." We think that under the circumstances of the case at bar the extrinsic evidence offered was admissible and competent; and this brings us to a view of the findings of the court below, and to a consideration of the construction placed upon the will in question.

The learned court found that the will was in the decedent's own handwriting; that she was not a highly educated person; that the two sisters named in the will were very close and attentive to the testatrix, while the three brothers had maintained no intimate relations with her for several years; that a trust company had entire charge of her property, and "that it was habitual

with her to speak of the matters constituting her estate in the hands of the trust company, as her 'things' .....;" and in this connection the court adds:—"The testimony as to the habit of the testatrix in speaking of the constituents of her estate as her 'things' is so full and emphatic, that in my opinion it is strongly persuasive evidence that by the words 'and other personal things' she meant her entire residuary personal estate; and that this fact considered with the fact of the special personal relations existing between the testatrix and her sisters, that they alone are mentioned in her will as the objects of her bounty, and that her brothers passed out of her immediate life before the death of her father, shows plainly an intention of the testatrix to bequeath to her sisters, Ella R. Arnold and Mary Arnold Babcock, her entire residuary personal estate."

In view of the findings of the court below, it is not difficult to believe that the testatrix intended to dispose of her entire estate and that she meant the expression, "and other personal things," to be read as though she had written after it,—"consisting of my stocks, bonds, moneys and other things of value." The strength of the contention to the contrary depends largely, if not entirely, upon a rule of construction, that where a testator enumerates a particular kind of chattels and couples with the enumeration a general term, such as "effects," or any equivalent word, the general term is to be restricted to the particular species of property named; and the appellant cites Lippincott's Est., 173 Pa. 368, and Schmidth's Est., 183 Pa. 641, to show that this rule should have been applied here. We do not feel that either of these cases controls the present one; it falls more nearly under the principle of Reimer's Est., 159 Pa. 212, where, as here, the language of the will was capable of an interpretation which would carry the entire estate and the application of the rule contended for would have led to an intestacy; it was there held that the word "effects," following an enumeration of par-

ticular kinds of property, would not be restricted to things ejusdem generis, but would be construed to cover the testator's full residuary estate not otherwise disposed of. While the case at bar is a close one, yet on the whole, we are not convinced that error was committed in placing a like construction upon the present will.

The assignments are overruled and the decree is affirmed at the cost of the appellant.